UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LADON MAURICE GREEN,

              Petitioner,

v.                                      Case No. 3:20-cv-610-BJD-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
and FLORIDA ATTORNEY GENERAL,

              Respondents.

_____

## ORDER

## I. STATUS

Petitioner, LaDon Maurice Green (Green), an inmate of the Florida penal system, initiated this action by filing a *pro se* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1; Petition). The Petition, as amended, raises seven grounds for relief. Docs. 1, 28-2. Respondents have responded to the Petition (Docs. 6, 37; Response),[1] and

---

[1] Exhibits A through LLL are attached to Doc. 6, Exhibits MMM through KKKK are attached to Doc. 33, and Exhibit LLLL is attached to Doc. 37. For purposes of reference to pleadings and exhibits, the Court will cite the document numbers and page numbers assigned by the Court's electronic docketing system.

Green has replied to their Response (Docs. 8, 42; Reply). Upon review, no evidentiary proceedings are warranted in this Court.[2]

## II. STANDARD OF REVIEW

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. *See Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016), *cert. denied*, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" *Id.* (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. *See Marshall v. Sec'y Fla. Dep't of Corrs.*, 828 F.3d 1277, 1285 (11th Cir. 2016). The

---

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." *Jones v. Sec'y, Fla. Dep't of Corrs.*, 834 F.3d 1299, 1318 (11th Cir. 2016) (citing *Chavez v. Sec'y Fla. Dep't of Corrs.*, 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.* The Court finds that "further factual development" is unnecessary. *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

*Wilson v. Sellers*, 584 U.S. 122, 125–26 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." *Id.* § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas

relief so long as fair[-]minded jurists could disagree on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* [at 102] (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 18 (2003); *Lockyer*, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Williams v. Taylor*, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

*Bishop v. Warden, GDCP*, 726 F.3d 1243, 1253–54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. *See* 28 U.S.C. § 2254(b)(1)(A). To do so, he must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust their claims, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), thereby alerting the appropriate state court of "the federal nature of the

4

claim[s]," *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). *See also Pope v. Rich*, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that *Boerckel* applies to the state collateral review process as well as the direct appeal process.").

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. Under the doctrine of procedural default:

> [A] federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. *See, e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 747–748 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 84–85 (1977). A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. *See, e.g.*, *Walker v. Martin*, 562 U.S. 307, 316 (2011); *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. *See Coleman*, 501 U.S. at 750.

*Martinez v. Ryan*, 566 U.S. 1, 9–10 (2012) (internal citations modified).

"To show cause, the petitioner must demonstrate 'some objective factor external to the defense' that impeded his effort to raise the claim properly in state court." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Once cause is established, "the petitioner also must show actual prejudice from the alleged constitutional violation." *Id.* (citing *Sykes*, 433 U.S. at 84). "[I]n order to show prejudice, a

petitioner must demonstrate that 'the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness.'" *Id.* (quoting *McCoy v. Newsome*, 953 F.2d 1252, 1261 (11th Cir. 1992)).

In the absence of a showing of cause and prejudice, a petitioner may still receive consideration on the merits of a procedurally defaulted claim if he can show that a fundamental miscarriage of justice would occur. As explained by the Eleventh Circuit:

> "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Carrier*, 477 U.S. at 496. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).

*Ward*, 592 F.3d at 1157 (internal citations modified). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." *Johnson*, 256 F.3d at 1171 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. *Schlup*, 513 U.S. at 324.

## C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 687. As explained in *Richter*:

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Counsel's errors must be "so serious as to

deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

*Richter*, 562 U.S. at 104 (internal citations modified).

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the *Strickland* test before the other." *Ward*, 592 F.3d at 1163. Since both prongs of the two-part *Strickland* test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." *Id.* (citing *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in *Strickland*: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied *Strickland*'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. *Richter*, 562 U.S. at 105. As such, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation

was 'within the wide range of reasonable professional assistance.'" *Daniel v. Comm'r, Ala. Dep't of Corrs.*, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." *Id.* (citing *Richter*, 562 U.S. at 105); *see also Evans v. Sec'y, Dep't of Corrs.*, 703 F.3d 1316, 1333–35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); *Rutherford v. Crosby*, 385 F.3d 1300, 1309 (11th Cir. 2004).

### III. PERTINENT FACTS AND PROCEDURAL HISTORY[3]

On November 26, 2012, the State of Florida filed an amended information charging Green with armed robbery with a deadly weapon while wearing a hood, mask, or other device that concealed his identity, based on events that occurred on October 10, 2011.[4] Doc. 6-1 at 27, 131. Green elected to represent himself, with stand-by counsel, starting at his arraignment on the original information on August 16, 2012[5] until his sentencing on March 14,

---

[3] The Court takes judicial notice of Green's state court dockets. *See McDowell Bey v. Vega*, 588 F. App'x 923, 926 (11th Cir. 2014) (stating that a district court may consider the contents of a publicly available docket sheet of plaintiff's criminal case).

[4] Some of Green's filings pertaining to Duval County Circuit Court case number 2012-CF-7413 are omitted from this Order as irrelevant to the issues before the Court. Similarly, Green's filings in the Calhoun County Circuit Court and any related appeals or petitions are also omitted from this Order.

[5] At the arraignment, the trial court held a hearing pursuant to *Nelson v. State*, 274 So.2d 256 (Fla. 4th DCA 1973), and *Faretta v. California*, 422 U.S. 806 (1975), and found Green was competent to waive the right to counsel, and his waiver was knowing and intelligent. *See* Doc. 6-1 at 162–78.

2013. *See* Doc. 6-1 at 159–81, 481–536, 550–72; Doc. 6-2; Doc. 6-3; Doc. 6-4; Doc. 6-5 at 3–180.

After Green's first jury trial on December 3–5, 2012, the trial court declared a mistrial. *See* Doc. 6-2 at 3–203; Doc. 6-3 at 3–218. After his second jury trial on January 28–31, 2013, the trial court adjudicated him guilty of robbery, as charged in the amended information, based on the jury's findings that he "carried a weapon, that was not a deadly weapon, during the commission of the offense" and that he "did wear a hood, mask, or other device during the commission of the offense." Doc. 6-1 at 340; Doc. 6-4; Doc. 6-5 at 9–181. On March 21, 2013, the trial court sentenced Green to life in prison as a Habitual Felony Offender (HFO), with a 30-year minimum mandatory sentence as a Prison Releasee Reoffender (PRR). Doc. 6-1 at 402–08, 600–01.

On April 19, 2013, through counsel, Green appealed his judgment and sentence to the First District Court of Appeal of Florida (First DCA). Doc. 6-1 at 445. On March 27, 2014, the First DCA *per curiam* affirmed the judgment without a written opinion in *Green v. State*, 139 So. 3d 303 (Fla. 1st DCA 2014) (1D13-1871), denied Green's *pro se* motion for rehearing or reconsideration on May 30, 2014, and issued the mandate on June 25, 2014. Doc. 6-5 at 262, 264–81, 283–84; Doc. 6-6 at 240.

On July 8, 2014, Green filed a *pro se* petition for writ of prohibition, which he amended on August 5, 2014 and September 11, 2014, seeking to

restrain Circuit Judge Mallory Cooper from presiding in his post-conviction proceedings. Doc. 6-6 at 2–5, 20–23, 39–42. On October 6, 2014, the First DCA *per curiam* denied the petition "on the merits," without an explanation, in *Green v. State*, 151 So. 3d 1235 (table) (Fla. 1st DCA 2014) (1D14-3123). Doc. 6-6 at 59. On October 22, 2014, Green filed a *pro se* motion for rehearing, clarification, certification, and written opinion, which the First DCA denied on November 19, 2014. Doc. 6-6 at 61–65.

On September 5, 2014, Green filed a *pro se* petition for writ of habeas corpus, alleging ineffective assistance of appellate counsel, which the First DCA *per curiam* denied "on the merits," without an explanation, on October 6, 2014, in *Green v. State*, 150 So. 3d 259 (Fla. 1st DCA 2014) (1D14-4080). Doc. 6-6 at 67–85, 113, 115; Doc. 6-8 at 47. On October 20, 2014, Green filed a *pro se* motion for rehearing, rehearing en banc, certification, clarification, and written opinion, which the First DCA denied on November 19, 2014. Doc. 6-6 at 117–26.

On April 21, 2015, Green filed a *pro se* petition for writ of habeas corpus, which the First DCA *per curiam* dismissed on May 27, 2015, pursuant to *Baker v. State*, 878 So. 2d 1236 (Fla. 2004)[6] and Fla. R. App. P. 9.141(c)(6)(C), in *Green*

---

[6] In *Baker*, the Florida Supreme Court held that "[t]he remedy of habeas corpus is not available in Florida to obtain the kind of collateral postconviction relief available by motion in the sentencing court pursuant to rule 3.850," and that the court would start dismissing as unauthorized:

*v. Jones*, 167 So. 3d 477 (Fla. 1st DCA 2015) (1D15-1916). Doc. 6-6 at 207–13, 257. On June 11, 2015, Green filed a *pro se* motion for rehearing and clarification, which the First DCA denied on July 10, 2015. *Id.* at 259–63.

On April 29, 2015, Green filed a *pro se* motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850, which he supplemented on June 25, 2015 and September 10, 2015. Doc. 6-7 at 47–79, 88–91. On August 25, 2016, the trial court summarily denied Green's Rule 3.850 motions. *Id.* at 229–42. Green filed a motion for rehearing and/or reconsideration on August 31, 2016 and a necessary addendum on November 14, 2016, which the trial court denied on November 16, 2016. *Id.* at 399–404, 422–23, 424–27. On May 31, 2017, the First DCA *per curiam* affirmed the denial without a written opinion in *Green v. State*, 226 So. 3d 816 (table) (Fla. 1st DCA 2017) (1D17-0059). Doc. 6-8 at 60. On June 9, 2017, Green filed a *pro se* motion for rehearing and disposition, which the First DCA denied on September 14, 2017. *Id.* at 62–

---

habeas corpus petitions filed by noncapital defendants that seek the kind of collateral postconviction relief available through a motion filed in the sentencing court, and which (1) would be untimely if considered as a motion for postconviction relief under rule 3.850, (2) raise claims that could have been raised at trial or, if properly preserved, on direct appeal of the judgment and sentence, or (3) would be considered a second or successive motion under rule 3.850 that either fails to allege new or different grounds for relief, or alleges new or different grounds for relief that were known or should have been known at the time the first motion was filed.

878 So. 2d at 1245–46.

69, 84. On September 21, 2017, Green filed a *pro se* motion for the court to take judicial notice and motion for rehearing en banc and written opinion, which the First DCA denied on January 12, 2018, and issued the mandate on February 2, 2018. *Id.* at 85–92, 94.

On July 8, 2015 and November 28, 2016, respectively, Green filed *pro se* petitions for writ of habeas corpus, which the trial court denied on January 27, 2017. *Id.* at 99–112, 150–64, 181–83. On February 13, 2017, Green filed a motion for rehearing, which the trial court denied on March 18, 2017. *Id.* at 223–25, 230–31. On August 25, 2017, the First DCA *per curiam* affirmed the denial without a written opinion in *Green v. Jones*, 233 So. 3d 1027 (Fla. 1st DCA 2017) (1D17-0581), and issued the mandate on September 22, 2017. Doc. 6-8 at 229, 233–38; Doc. 6-9 at 2–13, 15–24, 39–41.

On January 11, 2016, Green filed a *pro se* petition for writ of habeas corpus, which the Florida Supreme Court dismissed as unauthorized pursuant to *Baker*, in *Green v. Jones*, 2016 WL 743834 (Fla. Feb. 24, 2016) (SC16-0113), and stated it would not entertain any motion for rehearing or reinstatement. Doc. 6-6 at 155–70, 205.

On January 25, 2016, Green filed a *pro se* petition for writ of habeas corpus, alleging ineffective assistance of appellate counsel, which the First DCA *per curiam* dismissed as successive, pursuant to *Morris v. State*, 134 So. 3d 1066 (Fla. 4th DCA 2013), in *Green v. State*, 187 So. 3d 889 (Fla. 1st DCA

13

Feb. 26, 2016) (1D16-0323). Doc. 6-7 at 2–8, 36. On March 14, 2016, Green filed a motion for rehearing and reconsideration, which the First DCA denied on April 6, 2016. *Id.* at 38–41.

On February 13, 2017, Green filed a *pro se* petition for writ of habeas corpus, which the trial court denied on May 5, 2017. Doc. 6-8 at 194–208; Doc. 6-9 at 75–77. On May 12, 2017, Green filed a motion for rehearing, which the trial court denied on June 5, 2017. Doc. 6-9 at 98–101, 103–04. On February 19, 2018, the First DCA *per curiam* affirmed the denial without a written opinion in *Green v. State*, 241 So. 3d 768 (table) (Fla. 1st DCA 2018) (1D17-3200), and issued the mandate on March 19, 2018. Doc. 6-9 at 149–51.

On February 27, 2017, Green filed a *pro se* petition for writ of habeas corpus, which the First DCA *per curiam* dismissed pursuant to *Baker*, in *Green v. Jones*, 224 So. 3d 212 (table) (Fla. 1st DCA Mar. 27, 2017) (1D17-0827). Doc. 6-9 at 153–62, 175. On March 29, 2017, Green filed a supplement to his petition, which the First DCA construed as a motion and denied on April 18, 2017. *Id.* at 177–80. On April 10, 2017, Green filed a motion for rehearing en banc and written opinion, which the First DCA denied on May 3, 2017. *Id.* at 185–89.

On April 21, 2017, Green filed a *pro se* motion to vacate void judgment and sentence and for transport, which he supplemented on March 8, 2018 and

March 13, 2018. *See* Doc. 6-10 at 103. The trial court denied these motions on September 10, 2018. *Id.* at 103–07; *see also* Doc. 33-12 at 19–23.

On September 14, 2017, Green filed a *pro se* motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a), which the trial court denied on September 10, 2018. Doc. 6-10 at 78–80; Doc. 33-7 at 2.

On March 6, 2018, Green filed a *pro se* petition for writ of mandamus, which the First DCA *per curiam* "denied on the merits" on April 3, 2018 and stated:

> The Court notes that [Green] has unsuccessfully sought relief in eight other cases which challenged his judgment and sentence in Duval County, Fourth Judicial Circuit case number 16-2012-CF-7413. [Green] has failed to obtain relief by direct appeal, petition for writ of habeas corpus, petition alleging ineffective assistance of appellate counsel or appeals from postconviction orders in 1D13-1871, 1D14-4080, 1D15-1916, 1D16-0323, 1D17-0581, 1D17-0827, and 1D17-3200. Accordingly, [Green] shall show cause within 15 days of the date of this order why sanctions should not be imposed against him, including a prohibition against any future appeals or petitions challenging the judgment and sentence in Duval County, Fourth Judicial Circuit case number 16-2012-CF-7413, unless [Green] is represented by an attorney in good standing with The Florida Bar. . . . [Green] is advised that the failure to comply with the terms of this order within the time allowed may result in the imposition of sanctions without further opportunity to be heard. Fla. R. App. P. 9.410.

*Green v. State*, 243 So. 3d 929 (table) (Fla. 1st DCA 2018) (1D18-0960). After Green responded to the show cause order, the First DCA issued the following order on April 26, 2018:

Due to [Green's] apparent abuse of the legal process by his repeated *pro se* filings attacking the judgment and sentence, this Court issued an order directing [Green] to show cause why he should not be prohibited from future *pro se* filings. *State v. Spencer*, 751 So. 2d 47, 48 (Fla. 1999) (requiring the courts "first provide notice and an opportunity to respond before preventing [a] litigant from bringing further attacks on his or her conviction and sentence"). [Green's] response to the show cause order does not provide a legal basis to prohibit the imposition of sanctions.

As such, because [Green's] continued and repeated attacks on the judgment and sentence have become an abuse of the legal process, we hold that he is barred from future *pro se* filings in this Court concerning Duval County Circuit Court case number 2012-CF-7413. The Clerk of the Court is directed not to accept any future filings concerning this case unless they are filed by a member in good standing of The Florida Bar. [Green] is warned that any filings that violate the terms of this order may result in a referral to the appropriate institution for disciplinary procedures as provided in section 944.279, Florida Statutes. *See* Fla. R. App. P. 9.410.

Doc. 6-10 at 56. On May 17, 2018, the First DCA denied Green's motion for rehearing en banc and clarification with written opinion. The Florida Supreme Court denied his petition for writ of mandamus in *Green v. State*, No. SC22-540, 2022 WL 1548438, *1 (Fla. May 17, 2022).

On September 21, 2018, Green filed a *pro se* motion to correct illegal sentence under Rule 3.800(a) (filed in duplicate by the clerk of the court on September 27, 2018 and September 28, 2018), which the trial court denied on October 15, 2018. Doc. 6-10 at 27–39, 86–92; Doc. 33-11 at 2–8; Doc. 33-12 at 2–8. On October 26, 2018, Green filed a motion for rehearing or

reconsideration, which the trial court denied on November 27, 2018. Doc. 6-10 at 40–43, 51–52.

On January 28, 2019, Green filed a *pro se* petition for writ of habeas corpus, which the Florida Supreme Court "denied as procedurally barred" in *Green v. Inch*, No. SC19-0178, 2019 WL 2240149, *1 (Fla. May 24, 2019), and stated it would not entertain a motion for rehearing or reinstatement. Doc. 6-10 at 2–13, 69.

On June 4, 2019, Green filed a *pro se* motion to correct illegal sentence under Rule 3.800(a), which the trial court denied on November 20, 2019. *Id.* at 166–69, 182–83, 186–89. On or around December 12, 2019, Green appealed, but on December 26, 2019 the clerk of the court for the First DCA advised him that his *pro se* filings had "been placed in a correspondence file, unfiled and without action" pursuant to the order issued on April 26, 2018 in case number 1D18-0960. *Id.* at 224; Doc. 33-15 at 2–3, 10.

On December 12, 2019, Green filed another *pro se* motion to correct illegal sentence under Rule 3.800(a), which the trial court denied with prejudice on January 14, 2020. Doc. 6-10 at 225–32, 234–35.

On January 2, 2020, Green filed an amended motion to correct illegal sentence under Rule 3.800(a), which the trial court struck on February 16, 2022, as duplicative, immaterial, and moot because it was superseded by

Green's subsequent Rule 3.800(a) motion filed on July 21, 2020.[7] Doc. 33-20 at 2–9, 13–14.

On January 24, 2020, Green filed an amended petition for writ of habeas corpus, which the Florida Supreme Court dismissed in *Green v. Inch*, No. SC20-0007, 2020 WL 914665 (Fla. Feb. 25, 2020), explaining that generally it would "not consider the repetitive petitions of persons who have abused the judicial processes of the lower courts such that they have been barred from filing certain actions there" and that it would not entertain any motion for rehearing or reinstatement. Doc. 6-10 at 202–10, 248.

On April 30, 2020, Green filed another *pro se* amended petition for writ of habeas corpus, which the Florida Supreme Court denied as repetitive to *Green v. Inch*, No. SC19-0178, 2019 WL 2240149 (Fla. May 24, 2019), in *Green v. Inch*, No. SC20-0468, 2020 WL 3569226, *1 (Fla. July 1, 2020). Doc. 6-10 at 250–54, 259.

On July 21, 2020 and November 24, 2020, respectively, Green filed motions to correct illegal sentence under Rule 3.800(a), which the trial court struck "as moot and immaterial" on May 9, 2022, because they were superseded by Green's Rule 3.800(a) motion, filed on November 22, 2021 and denied on February 15, 2022. Doc. 6-10 at 261–64; Doc. 33-21 at 13–32, 50–56,

---

[7] That motion was submitted for mailing on July 16, 2020.

70–71. On March 2, 2022, Green filed a motion for rehearing, which the trial court denied on May 9, 2022. Doc. 33-21 at 57–63, 68–69.

On March 15, 2022, Green filed another *pro se* motion to correct illegal sentence under Rule 3.800(a), which the trial court denied on May 9, 2022. Doc. 33-22 at 2–5, 7–8.

On March 28, 2022, Green filed a *pro se* emergency petition for writ of habeas corpus, which the Florida Supreme Court denied as procedurally barred in *Green v. Dixon*, No. SC22-0399, 2022 WL 1548559 (Fla. May 17, 2022). Doc. 33-24 at 2–7, 37. On June 6, 2022, Green filed a motion for rehearing, which the Florida Supreme Court struck as unauthorized on June 8, 2022. *See id.* at 36–37.

On July 20, 2022, Green filed another *pro se* petition for writ of habeas corpus, which the Florida Supreme Court denied as repetitive to *Green v. Dixon*, SC22-0399, 2022 WL 1548559 (Fla. May 17, 2022), in *Green v. Dixon*, No. SC22-0941, 2022 WL 3442215 (Fla. Aug. 17, 2022). Doc. 33-23 at 2–9, 44–45.

On October 17, 2022, Green filed a *pro se* successive petition for writ of habeas corpus, which the Florida Supreme Court denied as repetitive in *Green v. Dixon*, No. SC22-1388, 2022 WL 17347248 (Fla. Dec. 1, 2022), and expressly retained jurisdiction to pursue any possible sanctions against Green in light of the fourteen other cases he had initiated in the Florida Supreme Court since

2013. Doc. 33-25 at 2–13, 50–52. The court made the following additional

findings:

> It appearing that [Green] has abused the judicial process by filing
> numerous *pro se* filings in this Court that are either meritless or
> not appropriate for this Court's review, the Court now takes action.
> Therefore, La[D]on M. Green is hereby directed to show cause on
> or before December 16, 2022, why he should not be barred from
> filing any pleadings, motions, or other requests for relief in this
> Court related to Case No. 162012CF007413AXXXMA unless such
> filings are signed by a member of The Florida Bar in good standing.
> [Green] is also directed to show cause why, pursuant to section
> 944.279(1), Florida Statutes, a certified copy of the Court's findings
> should not be forwarded to the appropriate institution for
> disciplinary procedures pursuant to the rules of the Florida
> Department of Corrections as provided in section 944.09, Florida
> Statutes.

2022 WL 17347248, at *1; Doc. 33-25 at 52. After considering Green's response

to the show cause order, on March 16, 2023, the Florida Supreme Court entered

an opinion in *Green v. Dixon*, 361 So. 3d 235 (Fla. 2023), stating in pertinent

part:

> [W]e direct the Clerk of this Court to reject any future pleadings
> or other requests for relief submitted by LaDon Green that are
> related to case number 162012CF007413AXXXMA, unless such
> filings are signed by a member in good standing of The Florida Bar.
> Furthermore, because we have found [Green's] petition to be
> frivolous, we direct the Clerk of this Court, pursuant to section
> 944.279(1), Florida Statutes (2022), to forward a copy of this
> opinion to the Florida Department of Corrections' institution or
> facility in which [Green] is incarcerated. No motion for rehearing
> or clarification will be entertained by this Court.

Doc. 33-25 at 49–50.

# IV. ANALYSIS

Green raises seven grounds for relief, which the Court will address sequentially except ground one, which will be addressed last. Docs. 1, 28-2.

## **Ground Two**

As Ground Two, Green alleges the trial court lacked jurisdiction to preside over his case because of the trial judge's actions related to Green's motions to disqualify the judge. Doc. 1 at 8; Doc. 8 at 22–33.[8] Green explains:

> The judge[,] during [the] December 18, 2012 proceedings for the motion to disqualify [the] trial judge[,] determined the motion as legally sufficient; thus, she was clearly prevented from presiding over [Green's] trial and sentencing. The same judge[,] during post-conviction proceedings[,] has agreed that those actions were sufficient grounds for her to discontinue during post-conviction yet the new judge refused to void [the] conviction and sentence as required.

Doc. 1 at 8.

---

[8] To the extent Green attempts to raise new claims in his Reply as to any of the alleged grounds, such claims are not properly before the Court. *See* Rule 2(c), Rules Governing Section 2254 Cases ("The petition must: (1) specify all the grounds for relief available to the petitioner . . . ."); *Herring v. Sec'y, Dep't of Corrs.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'") (collecting cases); *see also Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (finding that a *pro se* litigant abandoned an issue that was not raised in his initial brief as the court does "not address arguments raised for the first time in a *pro se* litigant's reply brief").

Green presented a similar claim in grounds six and thirteen of his Rule 3.850 motion. Doc. 6-7 at 58–61, 73–74, 203–05, 209. The trial court summarily denied the claims as follows:

<u>Ground Six</u>

[Green] contends the Court lacked jurisdiction to enter judgment or impose a sentence in his case. [Green] further contends the State violated his Constitutional rights by continuing to prosecute him when it was aware the Court lacked jurisdiction. Specifically, [Green] alleges the trial court judge had recused herself in an earlier proceeding in his case and was therefore barred from presiding in [his] retrial.

The record refutes [Green's] allegation that a recusal occurred. Contrary to [Green's] contentions, Judge Mallory Cooper denied [Green's] Motion for Disqualification of Judge filed prior to his first trial as legally insufficient. Likewise, after the first trial, Judge Cooper denied as legally insufficient [Green's] Motion for Disqualification of Judge filed on December 18, 2012. Furthermore, Judge William Wilkes agreed to cover [Green's] first trial, so he was [the] sitting judge for Judge Cooper at that time.

To the extent [Green] claims prosecutorial misconduct, such claims are procedurally barred in a [Rule] 3.850 motion. *Johnson v. State*, 985 So. 2d 1215 (Fla. 1st DCA 2008) (noting that claims of prosecutorial misconduct are not cognizable in a collateral postconviction motion). Accordingly, [Green] has failed to demonstrate that the Court lacked jurisdiction. Therefore, [Green] is not entitled to relief on Ground Six.

<u>Ground Thirteen</u>

[Green] claims the Court lacked jurisdiction to enter a judgment and sentence against [him] because Judge Cooper recused herself and because the Court failed to apprise [him] of his right to counsel at each critical stage of [the] proceedings. [Green] relies on his arguments from Grounds One, Six, and Seven in support of this claim.

As outlined above in its analysis of Grounds Six and Seven, Judge Cooper did not recuse herself from the case; therefore, she had jurisdiction to enter the judgment and sentence. Furthermore, the Court finds [Green's] claims regarding the Court's allege[d] failures to apprise [him] of his right to counsel to be a claim that should or could have been raised on direct appeal. Therefore, [Green's] claim is procedurally barred. *Baker*, 878 So. 2d at 1243; *Hughes v. State*, 22 So. 3d 132, 135 (Fla. 2d DCA 2009). Accordingly, [Green] is not entitled to relief on Ground Thirteen.

Doc. 6-7 at 237–38 (record citations omitted; case citations modified). The First DCA *per curiam* affirmed the trial court's denial without a written opinion. Doc. 6-8 at 60.

Because the First DCA affirmed without a written opinion, the Court presumes the affirmance was based on the trial court's findings. *See Wilson*, 584 U.S. at 125–26. As the trial court decided the claim on the merits, the Court addresses it in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). As the trial court observed, Green's motions for disqualification of Judge Cooper, filed before and after his first trial, were denied as legally insufficient on December 3, 2012 and January 24, 2013, respectively. Doc. 6-1 at 153–56, 230–33, 314–

23

17. His motion for disqualification filed after his second trial was also denied as legally insufficient on March 6, 2013. *Id.* at 385. As such, the trial court properly determined that a recusal did not occur either before or after Green's first trial.[9] Therefore, Ground Two must be denied.

## **Ground Three**

As Ground Three, Green alleges his trial counsel (Ms. Trish Rado), who was appointed solely for purposes of sentencing, was ineffective because she failed to inform the court that it lacked subject matter jurisdiction over Green's case considering his motions to disqualify the judge. Doc. 1 at 9; Doc. 8 at 34–37.

Green raised this claim in ground seven of his Rule 3.850 motion. Doc. 6-7 at 61–63. The trial court summarily denied the ground as follows:

> [Green] claims his counsel, who was appointed to represent [him] at sentencing, was ineffective for failing to bring to the Court's attention that it lacked jurisdiction because Judge Cooper recused herself prior to the second trial.
>
> As stated above in the Court's analysis of Ground Six, the record refutes [Green's] claim that the Court found [Green's] Motion to Disqualify legally sufficient. Furthermore, the record reflects that [Green] represented himself throughout pre-trial and trial proceedings. Therefore, "[a] defendant who represents himself has the entire responsibility for his own defense, even if he has standby counsel"; therefore, "[s]uch a defendant cannot thereafter complain that the quality of his defense was a denial of 'effective assistance

---

[9] On October 14, 2015, Judge Cooper granted Green's August 6, 2015 motion for disqualification filed over two years after his second trial. *See* Doc. 6-6 at 201–03; Doc. 6-7 at 81–83.

of counsel.'" *Behr v. Bell*, 665 So. 2d 1055, 1056–57 (Fla. 1996). As [Green] represented himself at the time of the filing of the Motion to Disqualify, he cannot claim ineffective assistance of counsel. *Id.* Accordingly, for the above stated reasons, [Green] is not entitled to relief on Ground Seven.

Doc. 6-7 at 238 (record citations omitted; case citation modified). The First DCA *per curiam* affirmed the trial court's denial without a written opinion. Doc. 6-8 at 60.

Because the First DCA affirmed without a written opinion, the Court presumes the affirmance was based on the trial court's findings. *See Wilson*, 584 U.S. at 125–26. As the trial court decided the claim on the merits, the Court addresses it in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Green's claim was neither contrary to nor an unreasonable application of federal law, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. *See* 28 U.S.C. § 2254(d).

Nevertheless, even if the state court's adjudication is not entitled to deference, this claim must still be denied on the merits. As discussed, Judge Cooper found Green's motions for disqualification to be legally *insufficient*, meaning that the trial court did *not* lack subject matter jurisdiction over Green's case. Considering that the record refuted Green's argument for lack of subject matter jurisdiction, his counsel was not ineffective for failing to raise

this futile issue at the sentencing hearing. *See Pinkney v. Sec'y, Dep't of Corrs.*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."); *Diaz v. Sec'y for Dep't of Corrs.*, 402 F.3d 1136, 1142 (11th Cir. 2005) (holding that counsel was not ineffective for failure to raise a meritless argument); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise non[-]meritorious issues does not constitute ineffective assistance."). Therefore, Ground Three is denied.

### Ground Four

As Ground Four, Green alleges ineffective assistance of sentencing counsel for failure to properly prepare a record of appeal. Doc. 1 at 11; Doc. 8 at 38–42. He explains:

> Had counsel properly prepared a record of appeal, appellate counsel would have known that [Green] did not waive his right to counsel because transcript would have shown that the trial court did not conduct a *Faretta* inquiry on December 3, 2012, the day of arraignment, or any day after prior [sic] to trial. This claim would have been raised because the record would have supported the claim.

Doc. 1 at 11.

Green raised this claim in grounds nine and ten of his Rule 3.850 motion. Doc. 6-7 at 68–70. The trial court summarily denied the grounds as follows:

> [Green] argues his counsel was ineffective for failing to properly complete the record on appeal, so as to afford [him] a proper and thorough direct appeal. The record reflects the Office of the Public Defender was appointed to represent [Green] on appeal prior to the Notice of Appeal being filed. Accordingly, [Green's] claims here are directed against appellate counsel. Such claims are not cognizable in a rule 3.850 motion, as claims of ineffective assistance of appellate counsel are required to be filed in the court to which the appeal was taken. Fla. R. App. P. 9.141(d)(3); *Jean-Marie v. State*, 27 So. 3d 709 (Fla. 3d DCA 2010). Accordingly, [Green] is not entitled to relief on Grounds Nine and Ten.

Doc. 6-7 at 239–40 (record citations omitted). The First DCA *per curiam* affirmed the trial court's denial without a written opinion. Doc. 6-8 at 60.

Because the First DCA affirmed without a written opinion, the Court presumes the affirmance was based on the trial court's findings. *See Wilson*, 584 U.S. at 125–26. As mentioned earlier, "[a] state court's rejection of a petitioner's constitutional claim on state procedural grounds will generally preclude any subsequent federal habeas review of that claim." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001); *see also Coleman*, 501 U.S. at 74–48. However, the state court's procedural ruling will preclude federal review only if it "rests upon [an] 'independent and adequate' state ground." *Judd*, 250 F.3d at 1313. A state court's procedural ruling constitutes an "independent and adequate" state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly states that it is relying upon a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not

intertwined with an interpretation of federal law, and (3) the state procedural rule is adequate, meaning it is not applied in an "arbitrary or unprecedented fashion," or in a "manifestly unfair" manner. *Id.*

Here, the trial court expressly applied a state procedural rule and concluded that Green could not raise the claim of ineffective assistance of appellate counsel in a Rule 3.850 motion, because Florida procedural rules require presentation of this claim "in the court to which the appeal was taken." Fla. R. App. P. 9.141(d)(3); *Jean-Marie*, 27 So. 3d at 710; *see also Downs v. State*, 740 So. 2d 506, 509 n.5 (Fla. 1999) ("Claims for ineffective assistance of appellate counsel are not cognizable in a rule 3.850 motion for postconviction relief, and are more appropriately raised in petitions for habeas corpus." (internal citations omitted)). The First DCA affirmed the application of the procedural bar. *See Harmon v. Barton*, 894 F.2d 1268, 1273 (11th Cir. 1990) (holding that a state appellate court's *per curiam* affirmance of the lower court's ruling explicitly based on procedural default is a clear and express statement of its reliance on an independent and adequate state law ground barring federal review). Further, Florida courts consistently apply the procedural rule barring the collateral review of a claim of ineffective assistance of appellate counsel in a Rule 3.850 motion. *See e.g.*, *Foster v. State*, 810 So. 2d 910, 917 (Fla. 2002) (stating that "[t]he issue of appellate counsel's effectiveness is appropriately raised in a petition for writ of habeas corpus").

Accordingly, Green's claim in Ground Four is procedurally defaulted. This default forecloses federal habeas review absent a showing of either cause and prejudice or a fundamental miscarriage of justice. *Harris v. Reed*, 489 U.S. 255, 262 (1989). Green fails to demonstrate cause and prejudice, or any factor warranting the application of the fundamental miscarriage of justice exception to overcome the procedural default. Because Green fails to proffer specific facts showing an exception to the procedural default rule, *Hill v. Jones*, 81 F.3d 1015 (11th Cir. 1996), the claim in Ground Four is procedurally barred from federal review. Nevertheless, even assuming the claim is not procedurally barred, it must still be denied on the merits for the reasons stated in the Court's discussion of Ground Seven. Therefore, Ground Four is denied.

## **Ground Five**

As Ground Five, Green alleges he was "sentenced pursuant to an inaccurate scoresheet," which "listed the wrong offense for sentencing and listed the wrong offense as prior convictions." Doc. 1 at 13. However, in his Reply, he "concedes and accepts Respondents' argument" for denying this claim. Doc. 8 at 43.

Green raised this claim in his Rule 3.800(a) motion. Doc. 6-10 at 27–33. The trial court summarily denied the claim as follows:

> First, [Green] claims that his primary offense was incorrectly scored as a level 9 and instead should have been scored as a level 8, because he was convicted of a first[-]degree felony punishable by

up to thirty (30) years. [Green] is incorrect. He was convicted of a first[-]degree felony punishable by life, which classifies as a level 9 offense on the Scoresheet, pursuant to Florida Rule of Criminal Procedure 3.704, Appendix A.

Additionally, [Green] claims that the "Prior Record" section of the Scoresheet was incorrect in that it failed to list his other felony convictions in his record, and which the State used to habitualize him, and listed only one offense – armed robbery – which [Green] claims was not accurate and could have prejudiced the court against [him]. The transcripts of the 2-part sentencing proceedings do not indicate that such was a consideration for the trial court, and instead the trial court found that [Green] qualified as both an HFO and PRR due to the number of prior felony convictions and the release date of his last felony conviction. As such, the trial judge imposed a lawful sentence.

Lastly, as an HFO, the sentencing guidelines do not apply in this matter. [Green] is subject to an enhanced sentence as a result of his prior record, regardless of the calculations on the sentencing guidelines. [Green] was notified of such when he was served with the State's Notice of Intent to Classify Defendant as a Habitual Felony Offender.

In sum, this is a frivolous Motion, which lacks merit. . . . [T]his Court also finds that [Green's] instant filing constitutes an abuse of the procedures governed by the rules and is frivolous in nature. . . . Thus, this Court directs [Green] to show cause why the Court should not bar him from filing further *pro se* claims in the instant case.

Doc. 6-10 at 37–39 (record citations omitted). Green moved for rehearing or reconsideration of the denial, which the trial court denied on November 27, 2018. *Id.* at 51–52. He could not proceed *pro se* to the First DCA, which had already found that Green had abused the legal process and barred him from

filing any *pro se* filings concerning his Duval County Circuit Court case. *See id.* at 56.

According to Respondents, Green has exhausted this claim by presenting it in his Rule 3.800(a) motion. *See* Doc. 6 at 42. The Court will bypass the exhaustion issue because the claim must be denied on the merits. *See Santiago-Lugo v. Warden*, 785 F.3d 467, 475 (11th Cir. 2015) (stating that "even when the defense has been preserved and asserted by the respondent throughout the proceeding, a court may skip over the exhaustion issue if it is easier to deny (not grant, of course, but deny) the petition on the merits without reaching the exhaustion question") (citing *Granberry v. Greer*, 481 U.S. 129, 131 (1987)); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Here, considering the claim in accordance with the deferential standard for federal court review of state court adjudications and upon thorough review of the record and the applicable law, the Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Moreover, even if the state court's adjudication is not entitled to deference, this claim must still be denied on the merits. Importantly, Green

"concedes and accepts" Respondents' argument that he is not entitled to relief

on this claim. Doc. 8 at 43. Therefore, Ground Five must be denied.

### Ground Six

As Ground Six, Green alleges he "was sentenced for the wrong offense."

Doc. 1 at 15; Doc. 8 at 43–48. Green explains:

> [He] was convicted by a jury for a lesser included offense for which
> he was tried before a jury. [Green's] original charge was robbery
> with a deadly weapon[,] a first[-]degree felony punishable by life.
> The jury acquitted [him] of the most severe charge and returned a
> verdict of robbery with a weapon[,] a lesser included offense[,]
> which is a first[-]degree felony with a maximum of 30 years. Yet
> [Green] sits in violation of double jeopardy for the offense of
> robbery with a firearm or deadly weapon[,] a first[-]degree felony
> punishable by life.

Doc. 1 at 15.

Green raised this claim in his Rule 3.800(a) motion. Doc. 6-10 at 166–69.

The trial court summarily denied the claim as follows:

> In the current Motion[,] [Green] argues his sentence is illegal
> because he was sentenced for a crime for which he was not charged;
> he supports his claim by arguing that the jury found him guilty of
> Robbery with a *non-deadly* weapon (and wearing a mask), which,
> he alleges, is not a first[-]degree felony punishable by life. [Green's]
> Motion is unfounded for the[] reasons stated hereinafter.

> The sentence imposed by the trial court is both consistent with the
> jury's finding and lawful. Section 812.13(2)(b), robbery with a
> weapon, is a category I lesser included offense of armed robbery
> with a firearm or deadly weapon when that crime is charged
> pursuant to 812.13(2)(a)[,] Florida Statutes. [Green] was found
> guilty of the lesser included charge of armed robbery with a
> weapon, a first[-]degree felony; he was further found guilty of
> wearing a mask during the commission of the crime. The first[-]

degree felony, however, was enhanced to allow for a maximum of life in prison, thereby, supporting the conviction entered by the trial court. The trial court found [Green] a Habitual Felony Offender in conformity with section 775.084(4)(a)(1), Fla. Stat.; therefore, the maximum penalty for the crime for which [Green] was found guilty was properly increased as allowed by statute "in the case of a life felony or a felony of the first degree, to life." Additionally, in conformity with section 775.082(9)(a)3.b., Fla. Stat., the trial court found [Green] a Prison Releasee Reoffender and sentenced him "[f]or a felony of the first degree by a term of imprisonment of 30 years," a mandatory minimum sentence, as authorized by said statute.

This Court recognizes that the Judgment and Sentence contain[] a scrivener's error, wherein it does not reflect conviction for the lesser included crime of robbery with a weapon I, § 812.13(2)(b), a first[-]degree felony, and the Clerk of Court is authorized to enter a corrected judgment and sentence. *See Johnson v. State*[,] 149 So. 3d 727, [729] (Fla. 5th DCA 2014) (allowing trial court to correct a scrivener's error in the sentencing documents to reflect conviction for a lower degree felony where the statutory enhancements support the term of the sentence imposed). Where the crime for which [Green] was found guilty was a lesser included crime, and [Green] was found to be both a Habitual Felony Offender and a Prison Release[e] Reoffender, the sentence imposed was authorized by law.

Doc. 6-10 at 187–88 (record citations omitted). Green appealed to the First DCA, but was advised by the clerk of the court that his *pro se* filings had "been placed in a correspondence file, unfiled and without action" pursuant to the order issued on April 26, 2018 in case number 1D18-0960. Doc. 6-10 at 224; Doc. 33-15 at 2–3, 10.

According to Respondents, Green has exhausted this claim by presenting it in his Rule 3.800(a) motion. *See* Doc. 6 at 45. Again, the Court will bypass

the exhaustion issue because the claim must be denied on the merits. *See Santiago-Lugo*, 785 F.3d at 475; 28 U.S.C. § 2254(b)(2). First, considering this claim in accordance with the deferential standard for federal court review of state court adjudications and upon thorough review of the record and the applicable law, the Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Moreover, even if the state court's adjudication is not entitled to deference, this claim must still be denied on the merits. Although Green was convicted of robbery with a weapon, which is a first-degree felony carrying a maximum penalty of 30 years in prison, his sentence was lawfully enhanced to life in prison because of his HFO status. Fla. Stat. §§ 775.082(3)(b), 775.084(4)(a)(1), 812.13(2)(b); Doc. 6-1 at 55, 340. Therefore, contrary to his argument, Green was not sentenced for the wrong offense. As such, Ground Six must be denied.

### **Ground Seven**

As Ground Seven, Green alleges as follows:

Ineffective assistance of counsel for counsel failing to bring to the trial court's attention that [the] trial court had violated [Green's] Sixth Amendment right to counsel by failing to offer and appoint counsel or obtain a valid waiver.

Counsel was ineffective during [Green's] sentencing. Patricia Rado[,] who was initially appointed as standby counsel[,] was

present at every proceeding that [Green] appeared before the court. As standby counsel[,] she was not obligated to bring matter to the court's attention. But at sentencing when she was then the attorney in the case[,] [s]he was then obligated to protect [Green] from an injustice.

Miss Rado was present at the December 3, 2012 arraignment of the amended information which [Green] was taken to trial on. Counsel[,] a trained attorney[,] should have known that the court asking [Green] if he still wished to continue self[-]representation was not a[n] offer of counsel. That statement would have been sufficient if asked during the same critical stage, but again counsel was required to know what a critical stage is.

At [Green's] sentencing[,] counsel never brought the matter to the court's attention. Instead, counsel only requested that the court sentence [Green] to a 30[-]year mandatory sentence as a prison releasee reoffender[,] [which was] . . . deficient performance. Her actions have caused a miscarriage of justice to occur by her failing to bring a fundamental error to the trial court's attention. . . . Petitioner was also denied his right to a fair trial.

. . . [Green] is now amending his petition because the December 3, 2012 transcripts conclusively prove that [Green] was not offered counsel for the critical stage of arraignment and that [Green] made no waiver of counsel.

Doc. 28-2 at 1–4; *see also* Doc. 42.

Green raised these allegations in ground fourteen of his Rule 3.850 motion. Doc. 6-7 at 74–77. The trial court summarily denied the ground as follows:

[Green] argues that stand-by counsel was ineffective for failing to apprise the Court of its alleged failure to inform [Green] of his right to counsel at certain critical stages of the proceedings. As [Green] represented himself through all critical stages of pre-trial and trial proceedings, [Green] cannot now assert a claim of ineffective

assistance of counsel. *Behr*, 665 So. 2d at 1056–57. Accordingly, [Green] is not entitled to relief on Ground Fourteen.

Doc. 6-7 at 241. The First DCA *per curiam* affirmed the trial court's denial without a written opinion. Doc. 6-8 at 60.

Because the First DCA affirmed without a written opinion, the Court presumes the affirmance was based on the trial court's findings. *See Wilson*, 584 U.S. at 125–26. As the trial court decided the claim on the merits, the Court addresses these allegations in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Green's claim was neither contrary to nor an unreasonable application of federal law, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. *See* 28 U.S.C. § 2254(d).

Nevertheless, even if the state court's adjudication is not entitled to deference, this claim must still be denied. At his initial arraignment on August 16, 2012, Green advised the trial court, in no uncertain terms, that he did not want to be represented by the Public Defender's Office, stating, "No one from that office has come to discuss any matters with me, and I'm not placing my life in anyone's hands but my own." Doc. 6-1 at 162, 165. Because of Green's

representations, the trial court conducted a *Faretta* inquiry. The following

exchange occurred between the trial court and Green:

> THE COURT: . . . The *Faretta* inquiry is very lengthy. I need you
> to answer my questions. Do you understand that you have a right
> to an attorney and if you cannot afford to hire an attorney, one will
> be appointed for you which has been done; do you understand that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And do you understand that the State of Florida will
> pay for your attorney to advice [sic] you in these proceedings?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And you told me you do not wish to continue with
> your appointed attorney, correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: I'm going to explain to you some of the ways that
> having an attorney to represent you can be to your advantage. A
> lawyer's legal knowledge and experience may favorably affect bail
> for pretrial release possibilities, may result in obtaining
> information about your case through the skillful use of discovery
> devices and may uncover potential violation of your Constitutional
> rights and take effective measures to address them, making sure
> compliance with speedy trial and statute of limitations provisions
> and may identify and secure favorable evidence to be introduced
> later at trial on your behalf. Do you understand that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: At the time of trial an attorney has the experience
> and knowledge of the entire process and would argue for your side
> during the whole trial and present the best legal argument for your
> defense.

Jury qualification and selection are governed by numerous legal procedures, and an attorney's knowledge and experience could enhance the selection process on your behalf.

A lawyer can call witnesses for you, question witnesses against you and present evidence on your behalf. A lawyer can advise you on whether you should testify, the consequences of that decision and what you have a right not to say.

A lawyer has studied the rules of evidence and knows what evidence can or cannot come into your trial. A lawyer may provide assistance in ensuring that a jury is given complete and accurate jury instructions by the Court, may make effective closing arguments on your behalf and may prevent improper argument by the prosecutor.

And a lawyer may ensure that any errors committed during trial are properly preserved for appellate review later by a higher court.

Do you understand those advantages?

THE DEFENDANT: Yes, ma'am.

THE COURT: In posttrial if you were to be convicted, a lawyer's assistance may be useful in preparing for sentencing, ensuring that favorable facts are brought to the attention of the Court, ensuring that the Court is advised of all legally available favorable dispositions and ensuring that your sentence is lawfully imposed.

And an attorney's legal knowledge and experience may be useful in filing an appeal and/or in seeking release on bail pending the appeal.

Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: It is almost always unwise to represent yourself in court. And these are some of the disadvantages:

Do you understand that you will not get any special treatment
from the Court just because you represent yourself?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that you will not be entitled to a
continuance simply because you want to represent yourself?

THE DEFENDANT: Yes, ma'am.

THE COURT: You will also be limited to the legal resources that
are available to you while you are in custody. You will not be
entitled to any additional library privileges just because you are
representing yourself. A lawyer has fewer restrictions in
researching your defense. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: However, what I do on that [is] I do an order giving
you the same library privileges and phone privileges as the other
*pro se* litigants, which can be a little bit more than the general
population.

You are not required to possess the legal knowledge and skills of
an attorney in order to represent yourself. However, you will be
required to abide by the rules of criminal law and the rules of
courtroom procedure. These laws took lawyers years to learn and
abide by. If you demonstrate an unwillingness to abide by the
rules, I may terminate your self-representation. Do you
understand that?

THE DEFENDANT: What do you mean by -- and do what after
that if you . . .

THE COURT: It just depends. But you have to follow the rules.
And I understand you are not legally trained, correct?

THE DEFENDANT: Yes.

THE COURT: And I understand that and I understand you're not
as familiar with the rules as an attorney would be. However, you

39

are required to follow the rules. And if you refuse to follow the rules -- if you don't know what to do on something, we'll try to help you through that either with the standby counsel or whatever, but I'm just saying if you refuse to follow the rules, then I can terminate your self-representation. If you are disruptive in the courtroom, I can terminate your self-representation and remove you from the courtroom, in which case your trial will continue without you being present. Do you understand?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that your access to the state attorney who is prosecuting you will be severely reduced as compared to an attorney who can easily contact the state attorney; do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: In addition the state will not go easier on you or give you any special treatment because you are representing yourself. The state will present its case against you as if you were an experienced attorney.

Is there a no contact order for the victim?

MS. MAUERBERGER: Judge, I don't know if that was indicated at J1, but not that I'm aware of.

THE COURT: The condition of your bond will be a provision of no contact with the victim or witnesses, of actual witnesses to the event if there were any. I don't know. And so the only way you can talk with them would be through a deposition where there would be sworn testimony with the court reporter, the state present, you present, and the witnesses present.

THE DEFENDANT: Yes, ma'am.

THE COURT: Other than that you are not allowed to contact them, but your attorney, if you have an attorney, can contact them and talk with them and see what they would be saying. Do you understand?

40

THE DEFENDANT: Yes, ma'am.

THE COURT: And, finally, if you are convicted, you cannot claim on appeal that your own lack of legal knowledge or skill constitutes a basis for a new trial. In other words, you cannot claim that you received ineffective assistance of counsel for yourself?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand all of the dangers and disadvantages that I have explained?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you have any questions about it?

THE DEFENDANT: No, ma'am.

*Id.* at 166–72.

After the trial court advised Green of the charge and the possible penalties, *see id.* at 172–74, the following colloquy took place:

THE COURT: And now I'm going to ask you a few questions about yourself to determine if you are competent to make a knowing and intelligent waiver of counsel. How old are you?

THE DEFENDANT: 46.

THE COURT: And you are able to read and write?

THE DEFENDANT: Yes, ma'am.

THE COURT: And English is your native language; is that correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: How many years of school did you complete?

41

THE DEFENDANT: 12.

THE COURT: And are you currently under the influence of any drugs or alcohol?

THE DEFENDANT: No, just blood pressure medicine.

THE COURT: Does that affect your ability to understand?

THE DEFENDANT: No, ma'am.

THE COURT: Do you have any physical problems which would hinder your self-representation in this case, and that would be something like a hearing problem, a speech impediment or poor eyesight?

THE DEFENDANT: Poor eyesight.

THE COURT: Are you able to see me?

THE DEFENDANT: I need reading glasses. I don't have them.

THE COURT: So you need reading glasses?

THE DEFENDANT: Yes, ma'am.

THE COURT: And do you have any but you just don't have them at the jail?

THE DEFENDANT: No, I don't have them at the jail, and I have been having problems getting in contact with members -- just someone to try to bring me some glasses. I thought maybe somebody would bring them. I guess somebody still (inaudible).

THE COURT: But you do have some glasses someone could bring to you?

THE DEFENDANT: Yes. I can easily buy some reading glasses.

THE COURT: I don't know if they have any reading glasses at the jail or not. You might check on that.

Have you ever been diagnosed or treated for a mental illness?

THE DEFENDANT: No, ma'am.

THE COURT: Has anyone told you not to use a lawyer?

THE DEFENDANT: No.

THE COURT: Has anyone threatened you if you use a lawyer?

THE DEFENDANT: No.

THE COURT: And do you understand again that an attorney appointed by the Court would represent you for free other than the $150 fee?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have you ever represented yourself in a trial?

THE DEFENDANT: No, ma'am.

THE COURT: Do you have any other questions about having a lawyer continue to represent you?

THE DEFENDANT: No, ma'am.

THE COURT: Having been advised of your right to counsel, the advantages of having counsel, the disadvantages and dangers of proceeding without counsel, the nature of the charges and possible consequences in the event of a conviction, are certain that you do not want your attorney to continue to defend you?

THE DEFENDANT: Yes, ma'am.

THE COURT: If I allow you to represent yourself and if you request it, I can have the assistant public defender act as standby counsel. They would be available for you if you have any questions during the course of these proceedings. Would you like standby counsel?

THE DEFENDANT: That would be fine.

THE COURT: Okay. I will appoint standby counsel to assist you. However, you are still responsible for the organization and content of presenting your case. And you still have the entire responsibility for your own defense. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: I do find that Mr. Green is competent to waive counsel and that his waiver of counsel is knowing and intelligent.

I will give you a copy of the *Faretta* inquiry I just went over with you, and you can read it anytime you want to. And if you ever have any questions, make sure you let me know.

THE DEFENDANT: I will.

*Id.* at 174–78.

At a pretrial motion hearing on October 4, 2012, Green again rejected

the trial court's offer of court-appointed counsel:

THE COURT: And do you still wish to continue to represent yourself with stand-by counsel?

THE DEFENDANT: Yes, ma'am.

THE COURT: And you understand that the Court will appoint an attorney who will represent you for free?

THE DEFENDANT: Yes, ma'am.

THE COURT: And I've gone over all that with you before?

THE DEFENDANT: Yes, ma'am.

THE COURT: And have found that you are competent and you waive counsel.

44

*Id.* at 484.

At another pretrial hearing on October 23, 2012, Green reaffirmed his

decision to continue to represent himself:

> THE COURT: Mr. Green, do you wish to still continue to represent
> yourself?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And you have stand-by counsel. And you
> understand that the State of Florida would pay for an attorney to
> represent you if you wanted to be represented?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And I have found on previous occasions that you are
> competent to waive counsel and that you're doing so knowingly and
> intelligently and freely and voluntarily.

*Id.* at 505.

Green continued to express his desire to represent himself at the next

pretrial hearing on November 20, 2012:

> THE COURT: First of all, Mr. Green, do you still wish to continue
> to represent yourself?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And you understand that the Court would appoint
> an attorney for you if you could not hire one and that attorney
> would represent you for no charge other than the $150 charge?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And you have stand-by counsel, correct?

45

THE DEFENDANT: Yes, ma'am.

THE COURT: And on previous occasions and again today I will find that you are competent to waive counsel, that your waiver is valid and intelligent and freely and voluntarily made.

*Id.* at 519–20.

Again, on November 29, 2012, Green reiterated his wish to continue representing himself:

THE COURT: Good morning, Mr. Green.

THE DEFENDANT: Good morning.

THE COURT: Do you wish to continue to represent yourself?

THE DEFENDANT: Yes, ma'am.

THE COURT: With stand-by counsel?

THE DEFENDANT: Yes, ma'am.

*Id.* at 534. That same day, the state advised Green that it filed an amended information, explaining:

The only change that I made in the Information is down at the bottom, I just added the language of gloves, mask or other conceal [sic] to conceal his i[d]entity contrary to Section 775.084. It's still an armed robbery. I just added that additional language, which is an enhancement[,] but in this case[,] won't enhance it.

*Id.* at 535–36. Green asked the trial court for additional time over the weekend to review the amended information before entering his plea, which the trial court granted. *Id.* at 536. Green, nevertheless, assured the trial court that he would be ready for trial the following week. *Id.* at 543.

The following Monday, December 3, 2012, at his arraignment on the amended information, Green was still not ready to enter a plea, and, thus, the trial court entered a plea of not guilty on his behalf. Doc. 37-2 at 4–5. Green then advised the trial court that he was not ready for trial and demanded that the judge disqualify herself. *Id.* at 5–6. The trial judge, the Honorable Mallory Cooper, passed the case to later that day for jury selection before the Honorable William A. Wilkes, with the understanding that the parties would begin presenting evidence to the jury the next day, Tuesday, December 4, 2012. *Id.* at 6–7. When Green appeared before Judge Wilkes for jury selection on December 3, 2012, he acknowledged that he was representing himself and had been doing so "[g]oing on four and a half months now, since arraignment." Doc. 6-2 at 6. Then, the following exchange took place:

> THE COURT: . . . Now, you want to continue representing yourself, correct?
>
> MR. GREEN: Yes, sir.
>
> THE COURT: And I guess you were in whose division, Judge Cooper's?
>
> MR. GREEN: Yes.
>
> THE COURT: And she went over what they call the "*Faretta*," about the advantages and disadvantages of representing yourself?
>
> MR. GREEN: Yes, sir.

> THE COURT: And you want Miss Rado to be your stand-by
> counsel? In case you have a question, you can ask her, in private,
> of course.
>
> MR. GREEN: Yes, sir.
>
> THE COURT: So you're ready to proceed?
>
> MR. GREEN: Yes, sir.
>
> THE COURT: All right. We're going to pick your jury first, and
> we're going to try your case tomorrow starting at 10:00 a.m.

*Id.* at 7–8. Green's case then proceeded through jury selection and trial before

Judge Wilkes, but the jury was unable to reach a verdict and the trial court

declared a mistrial on December 5, 2012. *See* Doc. 6-2 at 8–203; Doc. 6-3 at 3–

219.

At a pretrial conference on January 24, 2013, Green advised the trial

court that he still wanted to represent himself, with stand-by counsel, and

acknowledged that his retrial was set to begin the following Monday. Doc. 6-1

at 553, 571. The trial court again found that Green was competent to represent

himself and that he waived his right to counsel "knowingly and intelligently."

*Id.* at 571.

Prior to jury selection for Green's retrial, on January 28, 2013, the trial

court asked Green twice if he still wanted to represent himself at trial:

> THE COURT: Mr. Green, do you still wish to continue to represent
> yourself with stand-by counsel?
>
> THE DEFENDANT: Yes, ma'am.

. . . .

THE COURT: Mr. Green, before we bring the jury panel in, you're still under oath. Do you still wish to continue to represent yourself with stand-by counsel?

THE DEFENDANT: Yes, ma'am. Yes, ma'am.

THE COURT: And I have found on numerous occasions that you certainly are competent to waive counsel and do so knowingly and intelligently. I just wanted to check before we got started.

THE DEFENDANT: Okay. Thank you.

Doc. 6-4 at 8–10. After the jury was selected that day, the trial court once again

asked Green if he wished to continue to represent himself:

THE COURT: Good morning, Mr. Green.

Before we get started, do you still wish to continue to represent yourself with stand-by counsel?

THE DEFENDANT: Yes, ma'am.

THE COURT: And I have found previously on numerous occasions that you were competent to waive counsel and you did so knowingly and intelligently and nothing has occurred for me to change that finding. So you can proceed *pro se* with stand-by counsel.

*Id.* at 122.

Later, when Green was getting ready to testify at his retrial, on January

31, 2013, the trial court reaffirmed that he was competent to represent himself:

THE COURT: And I've already found on numerous occasions you're competent to represent yourself. You're certainly competent

to make this decision. But did you feel that you wanted to ask your stand-by counsel about it at all?

THE DEFENDANT: No, ma'am, I'm fine.

THE COURT: Okay. I do find that Mr. Green is freely and voluntarily and knowingly and intelligently electing to waive his right to remain silent and does wish to testify in his own defense.

Doc. 6-5 at 84.

After the jury reached a verdict at Green's retrial, he asked for court-appointed attorney, but then indicated at his sentencing hearing on March 14, 2013 that he wished to represent himself again:

MS. RADO: Your Honor, this is Mr. Green before the Court. I had an opportunity to speak with Mr. Green in the conference room, and he would like to go back to representing himself for [] sentencing purposes.

The reason he asked for the Public Defender['s] Office[] back was because he thought if he didn't at that time, he would lose the right to have us on appeal. I've explained to him that is not how the process works at that end it [sic] I certainly would ask for the services of the Public Defender's Office for the purposes of appeal. Based upon that, he would like to again go back to being his own attorney.

. . . .

THE COURT: Mr. Green, is there anything that Ms. Rado has done that has caused you to ask to represent yourself?

THE WITNESS: No, ma'am.

THE COURT: In other words, she has not provided ineffective assistance of counsel; is that correct?

THE WITNESS: No, ma'am.

> THE COURT: You just would like to represent yourself again?
>
> THE WITNESS: Yes.
>
> THE COURT: I have to go through the *F[a]retta* inquiry with you
> again. I'm sorry, that is just the rules.

Doc. 6-1 at 575–76. However, after the trial court went through the *Faretta* inquiry and the ensuing colloquy, Green decided to allow Ms. Rado to represent him for purposes of sentencing. *Id.* at 576–84.

Based on this record evidence, Green competently waived the right to counsel, did so knowingly and intelligently at each step of the pretrial and trial proceedings, and revoked his right to self-representation only for purposes of sentencing. "The Supreme Court has held the formal procedures required to waive counsel depend on the stage of the trial," and "range from none, for a post-indictment photographic display identification, to a full *Faretta* hearing, for a defendant to waive counsel for a criminal trial." *McClain v. Sec'y, Dep't of Corrs.*, 855 F. App'x 610, 613 (11th Cir, 2021) (citing *Patterson v. Illinois*, 487 U.S. 285, 298–99 (1988)). Green received a full *Faretta* hearing at his arraignment on the original information on August 16, 2012. At each subsequent pretrial motion hearing—those held on October 4, 2012, October 23, 2012, and November 20, 2012—the trial court advised him that it could appoint counsel on his behalf, and each time, he responded that he would continue to represent himself, with stand-by counsel. Green reaffirmed his

decision to continue to represent himself, with stand-by counsel, both on November 29, 2012 (the day he was advised of the amended information) and December 3, 2012 (the day of his arraignment on the amended information before Judge Cooper and jury selection before Judge Wilkes). Although on December 3, 2012, Judge Cooper did not seem to advise Green of his right to representation, later that day when he appeared for jury selection before Judge Wilkes, Green acknowledged he had been representing himself since the arraignment and reaffirmed his decision to continue to represent himself, with stand-by counsel. Doc. 6-2 at 6–8.

In sum, the record shows that Green knowingly and voluntarily elected to represent himself at all pretrial and trial proceedings, including those on November 29, 2012 and December 3, 2012. *See United States v. Stanley*, 739 F.3d 633, 645 (11th Cir. 2014) (holding the *Faretta* standard satisfied "[i]f the trial record shows that a defendant knowingly and voluntarily elected to represent himself" and stating that "[t]he failure to hold a *Faretta* hearing is not error as a matter of law"); *McClain*, 855 F. App'x at 613–14 ("There is no clearly established Supreme Court law on when the Sixth Amendment requires an additional waiver of counsel, just that there are times when it may be necessary. . . . *Patterson* only speaks to the type of waiver necessary depending on the stage, but it does not clearly hold there needs to be a new waiver at each stage.").

Notably, while "[u]nder Florida law, a violation of the right to counsel that occurs during a pretrial hearing is *per se* reversible error on direct appeal," "when reviewing the claim *de novo* under federal law, a violation of the right to counsel at a pretrial hearing must be evaluated for harmlessness." *Elbert v. Sec'y, Dep't of Corrs.*, No. 8:21-cv-2935-MSS-LSG, 2025 WL 460840, *19 (M.D. Fla. Feb. 11, 2025) (internal citations omitted). "On federal habeas review, a federal constitutional error is harmless unless there is 'actual prejudice,' meaning that the error had a 'substantial and injurious effect or influence' on the jury's verdict." *Lucas v. Warden, Ga. Diag. Classification Prison*, 771 F.3d 785, 791 (11th Cir. 2014) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). Green cannot show actual prejudice from not having counsel at the hearings on November 29, 2012 and December 3, 2012. On November 29, 2012, the trial court granted his request for additional time to review the amended information. On December 3, 2012, when Green indicated he was not ready to enter a plea, the trial court entered a not guilty plea on his behalf. And while the court moved the case to the end of the docket for jury selection that day, it proceeded with the jury selection only after Green confirmed that he was ready to proceed to trial and would continue to represent himself with stand-by counsel. Importantly, any claim of actual prejudice arising from the jury trial commencing the following day would appear to be negated by the fact that it resulted in a mistrial. Further, at all subsequent stages of his retrial, the trial

court continued to apprise Green of his right to representation and he
continued to confirm his desire to represent himself until the sentencing
hearing. *See* Doc. 6-4 at 8–10, 122. Thus, Green cannot show that any error
pertaining to his waiver of counsel had a substantial and injurious effect on
the jury's verdict. Because Green has not presented a meritorious argument
regarding his waiver, his trial counsel cannot be deemed ineffective for failing
to raise such an argument. *See Pinkney*, 876 F.3d at 1297; *Diaz*, 402 F.3d at
1142; *Bolender*, 16 F.3d at 1573. Therefore, Ground Seven is denied.

### **Ground One**

As Ground One, Green alleges ineffective assistance of counsel as
follows:

> [Green] was originally arraigned on August 16, 2012 and for
> arraignment purposes waived his right to counsel. On December
> 3, 2012, the day of jury selection, the State amended the
> information and denied [Green] the assistance of counsel for the
> purpose of arraignment [on the amended information] and trial[;]
> [t]hus, having to require [Green] to file a motion to disqualify trial
> judge at this arraignment proceedings.  The only *Faretta* inquiry
> was given at [Green's] sentencing and [Green] declined self-
> representation.

Doc. 1 at 6; *see also* Doc. 8 at 14–21.

Green raised a similar claim in ground one of his Rule 3.850 motion. Doc.
6-7 at 48–50 (alleging the State violated Green's rights under the Fifth, Sixth,
and Fourteenth Amendments to the United States Constitution when it
proceeded through multiple, critical stages of the case without asking the trial

court to renew the *Faretta* inquiry at each stage); *see also id.* at 88–91 (amended supplement to Rule 3.850 motion). The trial court summarily denied the claim as follows:

> In Ground One, [Green] contends the State's failure to request a full *Faretta* hearing prior to each stage of his trial constitutes prosecutorial misconduct. Specifically, [Green] claims the State was obligated to request a *Faretta* hearing at every crucial stage of his proceeding. [Green] further alleges he would have requested counsel had he been reminded of the advantages and disadvantages of self-representation.
>
> The Court finds this claim to be procedurally barred as an issue that should or could have been raised on direct appeal. *Baker*, 878 So. 2d at 1243. To the extent, [Green's] claims allege fundamental error or manifest injustice, the Court finds [Green's] claims are likewise procedurally barred. *Hughes*, 22 So. 3d at 135. Accordingly, [Green] is not entitled to relief on Ground One.

Doc. 6-7 at 231–32. The First DCA *per curiam* affirmed the trial court's denial without a written opinion. Doc. 6-8 at 60.

Because the First DCA affirmed without a written opinion, the Court presumes the affirmance was based on the trial court's findings. *See Wilson*, 584 U.S. at 125–26. As the trial court relied on an independent and adequate state procedural ground when it found the claim to be procedurally barred pursuant to *Baker* and *Hughes*, Green did not exhaust this claim and it is procedurally defaulted. *See, e.g.*, *Coleman*, 501 U.S. at 734–35 & n.1 (stating that federal habeas courts will consider a claim to be procedurally defaulted if it was presented in state court and rejected on the independent and adequate

state ground of procedural bar or default); *Cargile v. Sec'y, Dep't of Corrs.*, 349 F. App'x 505, 507–08 (11th Cir. 2009) (stating that claims raised in state habeas petitions that were dismissed under *Baker* as unauthorized were procedurally defaulted from federal habeas review). Importantly, Green has not shown cause and prejudice, or any factor warranting the application of the fundamental miscarriage of justice exception to overcome the procedural default. Nevertheless, even assuming the claim in Ground One is not procedurally defaulted, it must still be denied on the merits for the reasons stated in the Court's discussion of Ground Seven. Accordingly, Green is not entitled to federal habeas relief on Ground One.

Accordingly, it is

**ORDERED AND ADJUDGED**:

1.    The Petition (Docs. 1, 28-2) is **DENIED** and this action is **DISMISSED WITH PREJUDICE**.

2.    The **Clerk of Court** shall enter judgment dismissing this action with prejudice and close this case.

3.    If Petitioner appeals this Order, the Court denies a certificate of appealability.[10] Because the Court has determined that a certificate of

---

[10] The court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims

appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

  **DONE AND ORDERED** at Jacksonville, Florida, this 27th day of June, 2025.

              BRIAN J. DAVIS
          United States District Judge

Jax-11 6/25
c:
LaDon Maurice Green, #299316
Counsel of Record

---

debatable or wrong," *Tennard v. Dretke,* 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller–El v. Cockrell,* 537 U.S. 322, 335–36 (2003) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)). Upon due consideration of the record as a whole, this Court will deny a certificate of appealability.